IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN ALLEN HALL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-523 |
| | ) | |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| DENNIS MARTIN, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I. MEMORANDUM**

Pending before the Court is a Motion to Dismiss filed by Defendants Dennis Martin ("Defendant Martin") and The Moniteau School District ("Defendant School District") (**Doc. 5**), pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' Motion will be GRANTED IN PART AND DENIED IN PART.

**A. BACKGROUND[1]**

Plaintiff Sean Allen Hall ("Hall" or "Plaintiff") is a resident of the Borough of West Sunbury in Butler County and was a student at the Moniteau High School ("Moniteau") during the relevant period of time. Compl. (Doc. 1) ¶ 1. Defendant Martin was an employee of the School District and had been for many years a gym instructor at Moniteau. Id. at ¶ 2. Hall was a

---

[1] The following background facts are taken from Plaintiff's Complaint (Doc. 1). Because the case is presently before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pled factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

1

student in Martin's gym class while at Moniteau. Id. at ¶ 6. Hall was required to participate in gym as part of his high school curriculum. Id. at ¶ 7. As the gym instructor, Martin had the authority to choose the specific sports students would play in gym class and what rules would apply. Id. at ¶ 8. Martin had been a gym instructor at the school for many years prior to Hall's injury and Martin had always instructed his classes to play floor hockey as a regular gym activity. Id. at ¶ 9. Martin instructed students to determine among themselves which positions they would play. Hall was selected to play goalie on the date of his injury. Id. at ¶ 10. Students were provided with floor hockey sticks, goalie nets, and a hockey net, but students were not provided with eye protection or facial protection. Id. at ¶¶ 12-13.

On October 17, 2014 Martin instructed his students, including Hall, to play floor hockey "like regular hockey." Id. at ¶¶ 14-15. During the game, Hall was hit in the left eye with a floor hockey puck, which caused a choroidal rupture and a retinal tear. Id. at ¶ 16. Hall is now legally blind in his left eye with no expectation of recovery. Id. at ¶ 17. Hall's injury occurred within the normal course and scope of the game when a student shot a puck at the goal, striking Hall in the left eye. Id. at ¶ 18. Students had previously been injured after being hit by a floor hockey puck while playing goalie in Martin's class, and Martin was aware of these prior incidents. Id. at ¶¶ 20-21. Some of these incidents were reported to the school nurse who then notified the School District about the injuries. Id. at ¶¶ 22, 23. The School District was responsible for obtaining all equipment for gym activities or specifically delegated to Martin and other gym instructors final decision-making authority to select all equipment for gym activities. Id. at ¶ 24.

Plaintiff asserts claims against Defendants Martin and the School District for a deprivation of his right to bodily integrity under the Fourteenth Amendment to the United States

Constitution. See generally id. Defendants have moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rule of Civil Procedure. (Doc. 5).

**B. ANALYSIS**

   **1. Motion to Dismiss Under Rule 12(b)(1) for Lack of Standing**

Defendants first argue that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction because Plaintiff lacks standing. As properly stated by both parties, standing requires three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly…trace[able] to the challenged action of the defendant, and not…the result [of] the independent action of some third party not before the court." Id. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Id.

Here, Defendants claim that Plaintiff has not satisfied the first element of the test for standing because, according to Defendants, a lack of facial protection while engaged in floor hockey is not an invasion of bodily integrity that amounts to a legally protected interest. As Plaintiff argues, however, while the "use of facial protection while engaged in floor hockey" may not be a legally protected interest, the right to bodily integrity undoubtedly is a right secured by the Fourteenth Amendment. See, e.g. B.D. v. Downingtown Area Sch. Dist., 2016 WL 3405460, at *5 (E.D. Pa. June 20, 2016) (valid claim stated for violation of bodily integrity when track coach instructed students to run on two intersecting paths, causing one student to suffer serious injuries); Sciotto v. Marple Newton Sch. Dist., 81 F. Supp. 2d 559, 573 (E.D. Pa. 1999) (valid

3

claim stated for violation of bodily integrity when wrestling coach encouraged a much larger student to wrestle a smaller student resulting in an injury); Alt v. Shirey, 2012 WL 726579, at *12 (W.D. Pa. Feb. 7, 2012), report and recommendation adopted, 2012 WL 726593 (W.D. Pa. Mar. 1, 2012) (valid claim stated for violation of bodily integrity when football coach instructed player to go back into a game after suffering a serious hit to the head, resulting in a traumatic brain injury); Mann v. Palmerton Area Sch. Dist., 33 F. Supp. 3d 530 (M.D. Pa. 2014) (valid claim stated for violation of bodily integrity when high school football player suffered a head injury during football practice after he was hit in the head and then instructed to continue practicing).

Defendants further argue that Plaintiff cannot satisfy the second or third elements of the test for standing because the hockey puck that caused his injury was not shot by Defendant Martin, or any other employee of the School District. Plaintiff responds that Martin, in his capacity as a public school teacher, need not have shot the puck in order to establish a claim under § 1983. Indeed, as discussed below, in order to state a viable claim under the state-created danger theory, Plaintiff must merely show that "the state actor used its authority to create an opportunity which otherwise would not have existed for the specific harm to occur." Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 641 (3d Cir. 2015). Thus, the Court agrees that Plaintiff need not show that the Defendants physically struck him with the puck in order to establish standing in this case. For these reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

## 2. Motion to Dismiss Under Rule 12(b)(6)

### a. Count I: Claim against Defendant Martin

Defendants also move to dismiss the Complaint for failure to state a viable due process claim under the Fourteenth Amendment. While the Fourteenth Amendment generally confers no affirmative duty on the government to provide aid, see DeShaney v. Winnebago Cty. Dep't of Soc. Serv., 489 U.S. 189, 195-96 (1989), the Court of Appeals for the Third Circuit has acknowledged the state-created danger theory as an exception to this general rule. Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996). In order to state a viable claim under the state-created danger theory, a plaintiff must show the following: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the [harm] to occur. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 641 (3d Cir. 2015) (quoting Kneipp, 95 F.3d at 1208); Sanford v. Stiles, 456 F.3d 298, 304–05 (3d Cir. 2006) (in order to meet the fourth prong, a plaintiff must show that the "state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all").

The Court finds that Plaintiff has pled sufficient facts to state a viable § 1983 claim against Defendant Martin. The Court finds the decision, B.D. v. Downingtown Area Sch. Dist., 2016 WL 3405460, at *1 (E.D. Pa. June 21, 2016), particularly instructive. In that case, the plaintiff was a member of his high school's track team. According to the complaint, during an indoor track practice, the track coaches instructed students to run on two separate courses that intersected with each other at a "blind" intersection. Id. At one point, there was a collision

between the plaintiff and another runner, which resulted in serious injuries. Id. at *2. Prior to the collision, there were "small collisions and/or near misses." Id. The court found that all the elements of the state-created danger test had been met. First, the court concluded that the "small collisions and/or near misses" that occurred prior to the collision were sufficient to put the track coaches on notice of the foreseeable risk that two students would collide and there was "little attenuation" between the injury and the track coach's decision to make the running paths intersect. Id. at *3. Second, the court found that the track coaches demonstrated a "willful disregard" for safety by creating intersecting paths at a blind intersection when they knew or should have known that a collision could occur between two students. Id. at *4. Finally, the Court found that, while "allegations relating to the Defendants' failure to provide proper safety equipment do not satisfy the requirement of an affirmative act," the track coaches in that case acted affirmatively in designing the course so that the two groups of runners were on intersecting routes. Id. at *5.

Here, as in B.D., Plaintiff pled that there were "numerous occasions where students were injured after being hit by a floor hockey puck in Martin's class," and that "Martin was aware of these prior incidents but continued to instruct students to play floor hockey." (Doc. 1 at ¶¶ 20, 21). Further, there is little attenuation between Martin's decision to require Plaintiff to play goalie in floor hockey without any facial protective equipment and Plaintiff's injury. Accordingly, the Court finds that Plaintiff has alleged sufficient facts to demonstrate both that the harm ultimately caused was foreseeable and that Defendant Martin acted in willful disregard for his safety. Finally, even if Defendant Martin's alleged failure to provide Plaintiff with protective equipment was not an affirmative act in itself, his instruction to the class to play floor

hockey "like regular hockey" – similar to the coaches' design of the running course in B.D. – was affirmative, and thus the fourth prong of the state-created danger test is satisfied.

Because Plaintiff has sufficiently stated facts satisfying each element of the state-created danger theory, Defendant Martin's motion to dismiss for failure to state a claim will be denied.

b.  Count II: Claim against Defendant School District

Under Monell v. Department of Social Services, 436 U.S. 658, 691 (1958), a municipal employer such as Defendant School District may not be held liable under § 1983 solely on a theory of respondeat superior.  Rather, liability must be premised upon a showing that the constitutional injury resulted from the implementation or execution of the agency's official policies, practices or customs.  Id. at 694, 707-08.  As the Monell Court explained:

> [A] local government may not be sued under section 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell, 436 U.S. at 694; see also Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991).  Thus, to prevail in his claim against Defendant School District, Plaintiff must show either that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issue[d] an official proclamation, policy, or edict" or that there is a "custom" which, though not authorized by law, is "so permanent and well-settled" as to virtually constitute law. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Philadelphia, 895 F.3d 1469, 1480 (3d Cir. 1990)).

Once a plaintiff identifies a municipal policy or custom, "he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'"  Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).  Where the policy does not

7

facially violate the Constitution, "causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" Id. (citations omitted). Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations. See Bryan County, 520 U.S. at 408–09.

Here, Plaintiff has not alleged sufficient facts to establish that Defendant School District had a policy or well-settled custom resulting in the constitutional violation alleged in the Complaint. Plaintiff first alleges that "some" of the prior incidents involving Defendant Martin were reported to the school nurse, and that "upon information and belief, prior to Hall's injury, the School District became aware of some of these specific incidents of injuries by and through the school nurse." (Doc. 1 at ¶ 23). However, Plaintiff does not allege any additional facts regarding the incidents that allegedly came to the School District's attention, such as the number and severity of the resulting injuries to students. Without more information, the Court cannot determine whether the School District in fact acted with "deliberate indifference" by failing to investigate and respond to these incidents.

Furthermore, Plaintiff's allegation that the School District may have "specifically delegated to Martin and other gym instructors final decision-making authority to select all equipment for gym activities" (Id. at ¶ 24) is insufficient to establish liability under Monell. As the Supreme Court has explained multiple times, a municipality does not automatically delegate final policymaking authority to an employee when it delegates the discretion to carry out the duties necessary and proper to perform his or her job. City of St. Louis v. Praprotnik, 485 U.S. 112, 129-130 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 481-82 (1986) ("The fact that

8

a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.").

Finally, Plaintiff contends that "the School District had a policy, practice and/or custom of placing gym instructors (such as Martin) in charge of physical education without properly training them, or causing them to be trained, to ensure that gym activities were conducted without exposing students to unreasonable risks of harm." (Id. at ¶ 45). As noted, to assert § 1983 liability under a "failure to train" theory, a plaintiff must show "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact" and that the "deficiency in training must have actually caused the constitutional violation." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). Under normal circumstances, "a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." Id. Here, as noted, Plaintiff's allegation that the School Board may have been aware of "some" incidents involving Defendant Martin is insufficient to allege a pattern of violations giving rise to a viable Monell claim based on a failure to train.

In short, Plaintiff has not alleged sufficient facts showing that Defendant School District was deliberately indifferent to the alleged constitutional violation here. For this reason, the Court will dismiss Plaintiff's claim against the Defendant School District, without prejudice to Plaintiff filing an Amended Complaint.

## II. ORDER

For the reasons stated above, Defendants' Motion to Dismiss (**Doc. 5**) is GRANTED IN PART AND DENIED IN PART. Consistent with the foregoing, the Court hereby DISMISSES WITHOUT PREJUDICE Count II of the Complaint against Defendant School District. If

Plaintiff wishes to file an Amended Complaint, he must do so on or before August 16, 2017. Defendants must answer or otherwise plead fourteen (14) days thereafter. Plaintiff's failure to file an Amended Complaint by August 16, 2017 will result in the dismissal of the claim against Defendant School District WITH PREJUDICE.

    IT IS SO ORDERED.


August 2, 2017
                                       s/Cathy Bissoon
                                       Cathy Bissoon
                                       United States District Judge

CC (via ECF email notification):

All Counsel of Record